# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **J & J TECHNICAL SERVICES, L.L.C.** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **TECH-FLO CONSULTING, LLC,** | § | |
| | § | **CIVIL ACTION NO. 4:13-cv-2096** |
| **DOWNHOLE PRODUCTION** | § | |
| **SOLUTIONS L.L.C.,** | § | |
| | § | |
| **ERIK REISSIG** | § | |
| **Individually,** | § | |
| | § | |
| **THOMAS R. JACKSON** | § | |
| **Individually,** | § | |
| | § | |
| **and** | § | |
| | § | **JURY DEMANDED** |
| **WILLIAM J. JACKSON** | § | |
| **Individually,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION

TO THE HONORABLE COURT:

Plaintiff J & J Technical Services, L.L.C. (JJ Tech) files this Original Complaint

and Application for Temporary Restraining Order, Preliminary Injunction and

---

JJ Tech v. Tech-Flo *et al.* -- Original Complaint

Permanent Injunction complaining of Defendants Tech-Flo Consulting, LLC ("Tech-Flo"), Downhole Production Solutions L.L.C. ("DPS"), Erik Reissig, Thomas R. Jackson (a/k/a "Roland Jackson"), and his son William J. Jackson (a/k/a "Bill Jackson") and shows the following:

## I.
## Introduction

1. **Summary of the Case**

   JJ Tech brings this case because Tech-Flo, DPS, Erik Reissig, Roland Jackson and Bill Jackson jointly, severally and in concert with each other have continued to use JJ Tech's copyrighted Jet Pump Software, copyrighted confidential and proprietary Technical Drawings without authorization and have continued to use JJ Tech's tradename and trademarks/servicemarks to pass-off Tech-Flo's and DPS' products as authorized by and/or manufactured by JJ Tech thereby trading off of JJ Tech's goodwill and reputation.   Moreover, on information and belief, Tech-Flo, DPS, Erik Reissig, Roland Jackson and Bill Jackson have removed the indicia of ownership from JJ Tech's works of authorship in violation of the Digital Millennium Copyright Act.   The acts of Tech-Flo, Erik Reissig, and Bill Jackson have been aided and abetted by Roland Jackson and DPS's breach of the Manufacturing Agreement which provided for the manufacture of a limited number of complete jet pumps, including one nozzle and one mixing tube for each jet pump.

## II.
## Parties

1.      Plaintiff JJ Tech is a company organized and doing business under the laws of Louisiana, with a principal place of business at 5220 Hollywood Ave., Shreveport, Louisiana 71109.

2.      On information and belief, Defendant Tech-Flo is a company organized and doing business under the laws of Texas.  Tech-Flo's corporate headquarters are located in Conroe, Texas.  Tech-Flo can be located for service of process through its registered agent, Roland Jackson, at his principal place of business, 9701 Pozos Lane, Conroe, Texas 77303.

3.      On information and belief, Defendant DPS is a company organized and doing business under the laws of Texas.  DPS's corporate headquarters are located in Conroe, Texas.  DPS can be located for service of process through its registered agent, Roland Jackson, at his principal place of business, 9701 Pozos Lane, Conroe, Texas 77303

4.      On information and belief, Erik Reissig is an individual residing in this Judicial District and can be served with process at his principal place of business, 9701 Pozos Lane, Conroe, Texas 77303.

5.     On information and belief, Roland Jackson is an individual residing in this Judicial District and can be served with process at his principal place of business, 9701 Pozos Lane, Conroe, Texas 77303

6.     On information and belief, Bill Jackson is an individual residing in this Judicial District and can be served with process at his principal place of business, 9701 Pozos Lane, Conroe, Texas 77303.

### III.
### Jurisdiction and Venue

7.     This is a civil action for copyright infringement under 17 U.S.C. §§ 501 and § 1202 *et seq.*, including, without limitation § 1203 and under the Lanham Act, 15 U.S.C. § 1125 *et seq.*

8.     This Court has original subject matter jurisdiction over the federal copyright claims in this civil action under 28 U.S.C. §§ 1331, 1332, and 1338, as this action arises in part under the copyright laws of Title 17 of the United States Code.

9.     Also, this Court has jurisdiction based on diversity of citizenship, as the matter in controversy exceeds the sum or value of $75,000 between the parties and the parties' diversity of citizenship.

10.    This Court has supplemental jurisdiction over the state law claims for unfair competition and breach of contract under 28 U.S.C. § 1367(a).

11.     Venue is proper in the United States District Court of Texas, Houston Division under 28 U.S.C. §§ 1391(b) & (c), and 1400.

12.     Defendants have consented to the jurisdiction of this Court because all or most of the events giving rise to this cause of action took place in Conroe, Montgomery County, Texas.  28 U.S.C. § 124(b)(2).

### IV.
### Factual Background

**JJ Tech's Product Line and Business**

13.     JJ Tech is a U.S. based, worldwide supplier of artificial lift systems and hydraulic jet pump solutions to the oil and gas industry.  JJ Tech was formed in 2002 to acquire, manufacture, and market the patented New Coleman Jet Pump.  This pump was developed to produce large volumes of subsurface formation fluids with inclusions of moderate to high solid content.  Its unique design allows easy retrieval of the pump from the wellbore for replacement of the nozzle or mixing tube.  This retrieval is accomplished by adjusting the surface valves and reversing the circulation of fluid with the existing surface pump; no wire line, pulling unit or work over rig is typically required.  The renamed **JJ Tech Jet Pump** and the patented JJ Tech **ULTRA-FLO**TM Production System offers the oil and gas industry an artificial lift solution superior to other alternatives when dealing with a range of downhole issues, including:

- Producing Horizontal and Deviated Wells

- Accelerating Frac Fluid Flowback
- Gas Well Dewatering
- Maximizing Oil Production
- Wells Producing Sand and Solids

14.     Initially JJ Tech pursued a strategy of manufacturing jet pumps as production system components, and then marketing them through a group of distributors and end users.  In 2005, JJ Tech developed its patented **ULTRA-FLO**™ System, composed of a JJ Tech Jet Pump down hole, and a Wanner Engineering diaphragm surface pump.

15.     A landmark in JJ Tech's history was working closely with Wanner Engineering in creating the Hydra-Cell T-80 series of seal-less diaphragm surface pumps to replace conventional "packed" triplex plunger pumps as the surface pump driver of the system.  The design of these diaphragm pumps eliminates packing and plunger wear.   The benefits are lower maintenance costs and greater reliability, resulting in less production downtime, and the elimination of the inevitable leaks, spills, and emissions caused by conventional triplex pumps.  So effective is this pump, that it won the "Spotlight on New Technology" award at the 2010 Offshore Technology Conference in Houston, Texas.

16.     With the development of the **ULTRA-FLO**™ System, JJ Tech transitioned from supplying only jet pumps as components for other operating systems, to

---

delivering a "total" artificial lift system, customized to solve specific end user issues or maximize existing production. The capacity to offer complete solution systems in addition to the ongoing sale of individual jet pumps in a variety of configurations has broadened JJ Tech's market share.

17. A critical aspect of JJ Tech's jet pump is the sizing and optimization of nozzles and mixing tubes for its jet pump which enable an operator to efficiently operate the jet pump through a wide-range of well conditions. JJ Tech better serves its customers because of its ability to determine and deliver the optimal combination of nozzle and mixing tube sizes (from over 125 possible combinations) for the specific conditions in a well through the use of a copyrighted optimization software program known as the Jet Pump Program™ software (referred to as "Jet Pump Software"). The copyrighted Jet Pump Software is user-friendly, menu driven and allows JJ Tech's technical/sales staff to determine an optimal jet pump configuration and nozzle and mixing tube size combination, without the typical trial and error approach found in other applications and jet pumps. Moreover, JJ Tech's copyrighted Jet Pump Software generates a set of operating curves for the jet pump which are typically provided to the jet pump purchaser; operating curves that provide the jet pump purchaser with a graphical representation of the expected pump characteristics for the specific well and fluids to be pumped.

**JJ Tech's Business Dealings with Defendants --**
**Tech-Flo, DPS, Erik Reissig, Roland Jackson and Bill Jackson**

18.     JJ Tech was formed by John Tom James, who initially owned 100% of the

stock.  Shortly after JJ Tech's incorporation, John Tom James sold 50% of the stock to

Roland Jackson and his wife, Wendy Jackson (collectively, the "Jacksons").  In October,

2007 the Jacksons sold their 50% interest in JJ Tech to JP Resources, LLC ("JP

Resources") pursuant to a Purchase and Sale Agreement (hereafter the "P&S

Agreement").  JP Resources was a newly formed Louisiana LLC owned 100% by John

Tom James functioning as a single use acquisition and holding entity.  The P&S

Agreement provided, inter-alia, for the assignment of all of the Jacksons' right, title and

interest in JJ Tech (including all of Jackson's interest in JJ Tech's assets, copyrights,

patents, trade secrets and other intellectual property rights) to JP Resources in exchange

for certain recited consideration.  The P&S Agreement was subsequently amended,

however the consideration payable to the Jacksons has been fully paid.  The assets

acquired by JP Resources were contributed to JJ Tech as part of John Tom James' capital

contribution to JJ Tech and are now owned by JJ Tech.

19.     The P&S Agreement also contained a 2-year covenant not to compete

which provided that the Jacksons would not compete with JJ Tech for a period of 2

years commencing on October 5, 2007.  The non-compete period has expired and no

cause of action is asserted with respect to such non-compete.

20.     The P&S Agreement contained an assignment of all Patents and Intellectual Property by Jackson which provided in part as follows:

> For the consideration set forth in this Agreement, Jackson does hereby transfer, assign, deliver and set over, unto [JJ Tech] any and all of his right, title, and interest in and to Prior Patents and the JJ Tech Patents … and in and to all trademarks and trade names for products and services relating to the downhole jet pumps and diaphragm surface driving pump systems, including the goodwill associated therewith, ***as well as trade secrets, know how, and confidential business or technical information for products or services relating to downhole jet pumps or diaphragm surface driving pump systems***, including all drawings, documentation, and electrically stored information associated therewith, as well as all software which relates to the design, manufacture, and sale of such pumps.  Jackson may retain copies of certain software and drawings being transferred to [JJ Tech] hereby which will be required to provide contemplated consulting services to James, [JJ Tech], or [JJ Tech] Franchisees, but ownership and title to such software and drawings shall remain with [JJ Tech].[1]

The primary import of the foregoing provision is that Roland Jackson assigned all of his "***trade secrets, know how, and confidential business or technical information*** for products or services relating to downhole jet pumps or diaphragm surface driving pump systems."  As a consequence of the assignment, Roland Jackson had no base of

---

[1]        *See* Purchase and Sale Agreement attached hereto as Exhibit A, at ¶ 5.

knowledge with which he could design or develop a competing downhole jet pump or diaphragm surface driving pump system or provide services related to either.

21.     On August 1, 2008, JJ Tech entered into a Distribution Agreement with Defendant Tech-Flo.  *See* Distribution Agreement attached hereto as Exhibit B.  The Distribution Agreement provided for the appointment of Tech-Flo as the authorized distributor of JJ Tech's Products (including Jet Pumps and parts) within certain geographical areas defined in the Distribution Agreement.  The Distribution Agreement required Tech-Flo to refrain from offering jet pumps manufactured by any other manufacturer.  The Distribution Agreement was signed by Bill Jackson as CEO and GM of Tech-Flo and provided that "T. Roland Jackson has authority to act on behalf of [Tech-Flo]" and covenanted that JJ Tech "may rely on said authority until such time as [JJ Tech] receives written notice from [Tech-Flo] that such authority has been revoked." *See* Exhibit B, at ¶ 10.08.  No written revocation has been received from Tech-Flo.

22.     The Distribution Agreement provided that "Any demonstration equipment, evaluation software, manuals, instruction books, contract forms, advertising signs, and other similar material furnished to [Tech-Flo] by [JJ Tech] shall remain the property of [JJ Tech] …"*Id.*, at ¶ 4.03.

23.     Following termination of the Distribution Agreement, Tech-Flo ceased being an authorized distributor of JJ Tech and has no authority to represent that it is in any way affiliated or associated with JJ Tech.

24.     On January 12, 2011,  JJ Tech and DPS entered into a Manufacturing Agreement whereby JJ Tech would furnish certain confidential information and a license to DPS to enable DPS to manufacture up to one hundred twenty five (125) Jet Pumps.  *See* Manufacturing Agreement attached hereto as Exhibit C.  As defined in the Manufacturing Agreement, the term Jet Pumps means a complete jet pump, including a housing, top and bottom sub, standing valve assembly, carrier assembly, **_one nozzle, and one mixing tube_** …" *See* Exhibit C, ¶ 1 d.

25.     On May 18, 2012, Tech-Flo informed JJ Tech that it would "not be selling JJ Tech pumps exclusively" because it had "purchased a jet pump design and license from a non Tech-Flo related group."  *See* Tech-Flo letter of May 18, 2012, attached hereto as Exhibit D.  Tech-Flo ceased being an authorized distributor of JJ Tech's jet pumps on or about July 11, 2012 when JJ Tech terminated the Distribution Agreement following Tech-Flo's notice that that it would no longer sell JJ Tech jet pumps exclusively.  *See* Distribution Agreement Termination letter of July 11, 2012 attached hereto as Exhibit E.

26.     On July 11, 2012 JJ Tech terminated DPS's rights to distribute and sell JJ Tech jet pumps.  *Id.*  DPS' rights and license to manufacture up to 125 pumps was not

terminated.  *See* correspondence with respect to agreement which remained in effect, attached hereto as Exhibit F.

27.     Roland Jackson and Bill Jackson are a father-son team, each of whom has contributed to and participated in the activities and actions of Tech-Flo including the improper use of JJ Tech's confidential information, copyrighted software, passing off of Tech-Flo products as those of JJ Tech and trading off of the good will and reputation of JJ Tech.  Moreover, Roland Jackson and Bill Jackson are vicariously liable for the acts of their closely-held companies, DPS and Tech-Flo inasmuch as they direct and control the infringing activities of these companies.  Further, the father-son team intermingle Tech-Flo and DPS businesses.  Attached as Exhibit G is a copy of an email by Bonny Dawson advising the JJ Tech accounting department of the mailing address for DPS.  Of note is that the email address used by Ms. Dawson is that of Tech-Flo, specifically, BonnyDPS@tech-flo.net.  Further of note is the intermingling of DPS' identity with that of Tech-Flo inasmuch as both are present in the foregoing email address.

28.     Erik Reissig is a former employee of JJ Tech who is currently employed by Tech-Flo.  While employed by JJ Tech, Mr. Reissig was primarily responsible for all of the technical operations of JJ Tech, including loading customer parameters onto JJ Tech's copyrighted Jet Pump Software so as to optimize the sizing of jet pump nozzles and mixing tubes for each customer installation.  On information and belief, Mr. Reissig

continues to improperly use JJ Tech's copyrighted Jet Pump Software to size nozzles and mixing tubes for jet pumps other than those manufactured by JJ Tech or jet pumps manufactured under license from JJ Tech.  Mr. Reissig's conduct in using JJ Tech's copyrighted Jet Pump Software for uses other than for JJ Tech's pumps and pumps manufactured under license from JJ Tech constitutes unauthorized derivative works of JJ Tech's copyrighted Jet Pump Software in contravention of the United States copyright laws.

29.    On information and belief, Mr. Reissig improperly took copies of JJ Tech's copyrighted technical drawings for its pumps, nozzles and mixing tubes when he left the employ of JJ Tech.  Further, on information and belief, Mr. Reissig has altered or modified such drawings to create derivative works of such drawings and to change the indicia of ownership of such JJ Tech Technical Drawings all in contravention of the United States copyright laws.

**JJ Tech's Copyrighted and Confidential Technical Drawings**

30.    JJ Tech is the copyright owner of the technical drawings for nozzles and mixing tubes (a redacted set of JJ Tech's copyrighted technical drawings[2] is attached hereto as Exhibit H).  JJ Tech's copyrighted technical drawings for its nozzles and mixing tubes shall hereafter be referred collectively as "Technical Drawings."  JJ Tech

---

[2] The Technical Drawings have been redacted to delete confidential and proprietary information including tolerances, dimensions, and choice of materials.

JJ Tech v. Tech-Flo *et al.* -- Original Complaint

has applied for copyright registration of its Technical Drawings. *See* copyright registration applications attached hereto as Exhibit I. Moreover, the copyrighted Technical Drawings contain confidential fabrication information for the manufacture of nozzles and mixing tubes for JJ Tech's Jet Pumps. Other than the agreement by which DPS received the right to manufacture no more than 125 complete Jet Pumps (with each jet pump including 1 nozzle and 1 mixing tube), the Defendants do not have any right to use JJ Tech's copyrighted and confidential information to manufacture nozzles, mixing tubes or jet pumps. Moreover, the Defendants right to manufacture nozzles and mixing tubes has expired by the terms of he Manufacturing Agreement and Defendants have no extant right to manufacture nozzles and mixing tubes.

31.   JJ Tech's Technical Drawings constitute copyrightable subject matter, within the meaning of Section 102(a) of the Copyright Act and owned by JJ Tech.

32.   JJ Tech's Technical Drawings are an original work of authorship fixed in a tangible medium of expression from which it can be perceived.

33.   JJ Tech has complied in all respects with the statutory requirements for the creation and enforcement of the copyright in its Technical Drawings.

34.   On information and belief, Tech-Flo is altering JJ Tech's copyrighted Technical Drawings and making copies of same without the authority of the copyright owner.

35.     On information and belief, Tech-Flo is altering the indicia of ownership on JJ Tech's copyrighted Technical Drawings by removing references to JJ Tech and thereafter inserting its own tradenames and logo and thereby passing off JJ Tech's Technical Drawings as its own.

36.     On information and belief, Tech-Flo is manufacturing nozzles and mixing tubes through the improper use of JJ Tech's copyrighted and confidential Technical Drawings.

**JJ Tech's Copyrighted Software**

37.     JJ Tech is the owner of the registered copyright for the Jet Pump Program™ software (referred to as "Jet Pump Software") and also known by the tradename "**The New Coleman Pump Co.**"  JJ Tech's Registration No. TXu 1-853-579 dated March 7, 2013 is attached hereto as Exhibit J.  The software was written by Paul Eads.  All right, title and interest in the Jet Pump Software was assigned to JJ Tech by Paul Eads.  The assignment of the copyright also included an assignment of all causes of action that accrued before the assignment.  JJ Tech has not authorized any of the Defendants to use the copyrighted Jet Pump Software other than in connection with the sizing of nozzles and mixing tubes for JJ Tech Jet Pumps.

38.     JJ Tech's Jet Pump Software constitutes copyrightable subject matter, within the meaning of Section 102(a) of the Copyright Act.

---

39.     JJ Tech's Jet Pump Software is an original work of authorship fixed in a tangible medium of expression from which it can be perceived and owned by JJ Tech.

40.     JJ Tech has complied in all respects with the statutory requirements for the creation and enforcement of the copyright in its Jet Pump Software.

41.     On information and belief, Defendants are altering JJ Tech's copyrighted Jet Pump Software and making copies of same without the authority of the copyright owner.

42.     On information and belief, Defendants are using JJ Tech's copyrighted Jet Pump Software to size nozzles and mixing tubes for non-JJ Tech equipment through the improper use of JJ Tech's copyrighted Jet Pump Software.

43.     On information and belief, Defendants are altering the indicia of ownership on JJ Tech's copyrighted Jet Pump Software by removing references to JJ Tech and thereafter inserting its own tradenames and logo and thereby passing off JJ Tech's copyrighted Jet Pump Software as their own.

**JJ Tech's Common Law Trademarks and Servicemarks**

44.     JJ Tech is the owner of common law trademark and servicemark, "**JJ Tech**SM".   Other representations of JJ Tech's common law trademark/servicemark include the following:

---



45.     JJ Tech is also the owner of the common law trademark and servicemark, "**New Coleman Pump Company**™."

46.     Tech-Flo is improperly using JJ Tech's common law trademarks/servicemarks in its customer presentations.  Attached hereto as Exhibit K is a Power Point presentation sent by Tech-Flo to prospective customers illustrating the JJ Tech tradename and servicemark in the course of offering Tech-Flo products in an effort to tradeoff of the goodwill and reputation of JJ Tech.  The unauthorized and improper association of JJ Tech and Tech Flo is illustrated in the graphic taken from the presentation which shows a cutaway of a JJ Tech Jet Pump below:



47.     Tech-Flo's improper use of JJ Tech's common law trademark and servicemark is causing confusion in the marketplace as is evidenced by the inquiry from

Carl Bowers, completion Superintendent of Quicksilver Resources, Inc. dated June 19, 2013 attached hereto as Exhibit L, wherein Mr. Bowers asks of Chris Lamberth of JJ Tech – _"Are these guys the same as you guys?  Says they sell your stuff."_

48.    Moreover, Tech-Flo is improperly using JJ Tech's technical illustrations in a further effort to improperly associate itself with JJ Tech's products and goodwill as illustrated below:






The above excerpts from Tech-Flo's customer presentation illustrate the use of JJ Tech's tradenames and trademarks to wit, "**JJ Tech**" and "**New Coleman Pump Company**." _See_ Exhibit K.

## V.

## Causes of Action

**Count 1 –   Willful Violations of US Copyright Act: Unauthorized Copying, Use and Preparation of Derivative Works of Copyrighted Jet Pump Software**

49.     Plaintiff incorporates the preceding allegations as if fully set forth herein.

50.     On information and belief, each Defendant, acting individually, or in concert, has engaged in one or more acts of copyright infringement under 17 U.S.C. § 501(a) by violating one or more of Plaintiff's exclusive rights under 17 U.S.C. § 106 in Plaintiff's Jet Pump Software.

51.     For instance, on information and belief, each Defendant, acting individually, or in concert, has engaged in the unauthorized reproduction of Plaintiff's copyrighted Jet Pump Software, at least in connection with promotional materials such as the Tech-Flo Powerpoint Presentation attached hereto as Exhibit K, in violation of 17 U.S.C. §§ 106(1) and 501.

52.     On information and belief, each Defendant, acting individually, or in concert, has engaged in the unauthorized preparation of derivative works of Plaintiff's copyrighted Jet Pump Software in an effort to pass the software off as its own in connection with the sales of jet pumps in competition with JJ Tech.  Additionally, Tech-Flo's improper and unlicensed use of the copyrighted Jet Pump Software greatly facilitates Tech-Flo's sale of its own jet pumps inasmuch as Tech-Flo's jet pumps have

been expressly designed to use the same nozzles and mixing tubes used in JJ Tech's Jet Pumps.  But for Tech-Flo's improper use of JJ Tech's copyrighted Jet Pump Software and proprietary nozzle and mixing tube designs, it would have been much more difficult for Tech-Flo to successfully market its jet pumps and jet pump based systems.

53.    On information and belief, each Defendant, acting individually, or in concert, has engaged in the unauthorized distribution of copies of the illegal derivative works of Plaintiff's copyrighted Jet Pump Software in an effort to pass the software off as its own in connection with the sales of jet pumps in competition with JJ Tech.

54.    Each of the Defendants are vicariously liable for the acts of the others.

55.    Each of the Defendants act in concert with the others thereby contributing to the acts of copyright infringement.

56.    Each of the Defendants' acts of copyright infringement have been willful.

57.    As the legal owner of the copyrighted Jet Pump software, JJ Tech is entitled to institute this action against the Defendants in accordance with 17 U.S.C. § 501(b) for their willful acts of copying, using, preparation of derivative works and distribution of copies of derivative works of the copyrighted Jet Pump Software.

58.    JJ Tech has suffered damages as a result of Defendants' willful acts of copyright infringement and is entitled to damages to compensate for such acts.

59.     JJ Tech is entitled to injunctive relief, actual damages, and Defendants' profits, or, in the alternative, an award of statutory damages for Defendants' willful infringement of JJ Tech's copyrighted Jet Pump Software.

**Count 2 –     Willful Violations of US Copyright Act: Unauthorized Copying, Use and Preparation of Derivative Works of Copyrighted Technical Drawings**

60.     Plaintiff incorporates the preceding allegations as if fully set forth herein.

61.     On information and belief, each Defendant, acting individually, or in concert, has engaged in one or more acts of copyright infringement under 17 U.S.C. § 501(a) by violating one or more of Plaintiff's exclusive rights under 17 U.S.C. § 106 in Plaintiff's copyrighted Technical Drawings.

62.     For instance, on information and belief, each Defendant, acting individually, or in concert, has engaged in the unauthorized reproduction of Plaintiff's copyrighted Technical Drawings to manufacture nozzles and mixing tubes in violation of 17 U.S.C. §§ 106(1) and 501.

63.     On information and belief, each Defendant, acting individually, or in concert, has engaged in the unauthorized preparation of derivative works of Plaintiff's copyrighted Technical Drawings in an effort to pass nozzles and mixing tubes as its own in connection with the sales of jet pumps in competition with JJ Tech.

64.     On information and belief, each Defendant, acting individually, or in concert, has engaged in the unauthorized distribution of copies of the illegal derivative works of Plaintiff's copyrighted Technical Drawings in an effort to manufacture mixing tubes and nozzles for its own jet pumps in connection with the sales of jet pumps in competition with JJ Tech.

65.     Each of the Defendants are vicariously liable for the acts of the others.

66.     Each of the Defendants act in concert with the other thereby contributing to the acts of copyright infringement.

67.     Each of the Defendants' acts of copyright infringement have been willful.

68.     As the legal owner of the copyrighted Technical Drawings, JJ Tech is entitled to institute this action against the Defendants in accordance with 17 U.S.C. § 501(b) for their willful acts of copying, using, preparation of derivative works and distribution of copies of derivative works of the copyrighted Technical Drawings.

69.     JJ Tech has suffered damages as result of Defendants' willful acts of copyright infringement and is entitled to damages to compensate for such acts.

70.     JJ Tech is entitled to injunctive relief, actual damages, and Defendants' profits, or, in the alternative, an award of statutory damages for Defendants' willful infringement of JJ Tech's copyrighted Technical Drawings.

**Count 3 –**   **Violations of the Digital Millennium Copyright Act: Removal of Copyright Management Information on JJ Tech's Copyrighted Jet Pump Software**

71.     Plaintiff incorporates the preceding allegations as if fully set forth herein.

72.     On information and belief, each Defendant, acting individually, or in concert, has engaged in one or more violations of the Digital Millennium Copyright Act under 17 U.S.C. § 1202(b) by intentionally removing or altering the copyright management information contained on JJ Tech's Jet Pump Software.

73.     JJ Tech's copyrighted Jet Pump Software produces a "Jet Pump Analysis" printout substantially in the form reproduced below:



74.     Tech-Flo has removed JJ Tech's indicia of ownership and substituted its own name on the print out to produce an unauthorized derivative work of JJ Tech's

copyrighted Jet Pump Software.  As such, the altered print out looks substantially as follows:



75.     Similarly, JJ Tech's copyrighted Jet Pump Software produces a "cross-plot" of jet pump operating characteristics as illustrated below:



76.     Tech-Flo has removed JJ Tech's indicia of ownership and substituted its own name on the print out to produce an authorized derivative work of JJ Tech's copyrighted Jet Pump Software.  As such, the altered print out looks substantially as follows:



77.     JJ Tech has suffered damages as a result of Defendants' acts of removal of copyright management information and is entitled to damages to compensate for such acts.

78.     Each of the Defendants are vicariously liable for the acts of the others.

79.     Each of the Defendants act in concert with the others thereby contributing to the acts of removal of copyright management information.

80.     Each of the Defendants acts of violations of the Digital Millennium Copyright Act has been willful.

81.     As the legal owner of the copyrighted Jet Pump software, JJ Tech is entitled to institute this action against the Defendants in accordance with 17 U.S.C. § 1202 for their willful acts of removal of copyright management information.

82.     JJ Tech is entitled to injunctive relief, actual damages, and Defendants' profits for Defendants' acts of removal of copyright management information, or, in the alternative, an award of statutory damages for Defendants' acts in violation of Section 1202.

**Count 4 –     Violations of the Digital Millennium Copyright Act: Removal of Indicia of Ownership on JJ Tech's Copyrighted Technical Drawings**

83.     Plaintiff incorporates the preceding allegations as if fully set forth herein.

84.     On information and belief, each Defendant, acting individually, or in concert, has engaged in one or more violations of the Digital Millennium Copyright Act by under 17 U.S.C. § 1202(b)  by intentionally removing or altering the copyright management information contained on JJ Tech's technical drawings.

85.     JJ Tech's technical drawings are used to manufacture nozzles and mixing tubes among other components for jet pumps.

86.     On information and belief Tech-Flo has removed JJ Tech's indicia of ownership and substituted its own name on JJ Tech's technical drawings

87.     JJ Tech has suffered damages as a result of Defendants' acts of removal of copyright management information and is entitled to damages to compensate for such acts.

88.     Each of the Defendants is vicariously liable for the acts of the others.

89.     Each of the Defendants act in concert with the others thereby contributing to the acts of removal of copyright management information.

90.     Each of the Defendants' acts of violations of the Digital Millennium Copyright Act have been willful.

91.     As the legal owner of the copyrighted technical drawings, JJ Tech is entitled to institute this action against the Defendants in accordance with 17 U.S.C. § 1202 for their willful acts of removal of copyright management information.

92.     JJ Tech is entitled to injunctive relief, actual damages, and Defendants' profits for Defendants' acts of removal of copyright management information, or, in the alternative, an award of statutory damages for Defendants' acts in violation of Section 1202.

**Count 5 – Violations of US Lanham Act, 15 U.S.C. §1125(a)(1)(A): False Designation of Origin, Use of JJ Tech's Trademarks/Servicemarks to Cause Confusion in the Marketplace**

93.     Plaintiff incorporates the preceding allegations as if fully set forth herein.

94.     On information and belief, Defendants have engaged in such wrongful conduct as the use of JJ Tech's trademarks/servicemarks on marketing materials and presentations.  Tech-Flo's marketing materials include JJ Tech's trademark/servicemark and identify Tech-Flo as a "licensed international and domestic distributor of JJ Tech Jet Pumps and Ultra-Flo Systems."  *See* Exhibit K, Tech-Flo Presentation.  The "JJ Tech jet pump" is referenced in the presentation as well.  *Id.*

95.     On information and belief, Defendants engaged in such wrongful conduct with the purpose of misleading or confusing customers and potential customers as to the origin, sponsorship, or approval of the goods and services advertised, marketed, and offered in connection with JJ Tech's marks, name, and of trading upon JJ Tech's goodwill and business reputation.

96.     Defendants' use in commerce of JJ Tech's trademarks and servicemarks constitutes a false designation of origin and/or a false or misleading description or misrepresentation of fact, which is likely to cause confusion, cause mistake, or deceive as to affiliation, connection, or association with JJ Tech, or as to the origin, sponsorship, or approval of Defendants' goods and services and commercial activities by JJ Tech.

97.     Defendants' use in commerce of JJ Tech's trademarks and servicemarks with the knowledge that JJ Tech owns such constitutes intentional conduct by

Defendants to make false designations of origin and false descriptions about Defendants' goods/services and commercial activities.

98.     Defendants' acts have been willful.

99.     JJ Tech is being irreparably harmed as result of Defendants' false designation of origin and is entitled to damages to compensate for such acts.

100.    JJ Tech is entitled to immediate injunctive relief to restrain and enjoin Defendants' use of JJ Tech's tradename and trademarks/servicemarks.

**Count 6 –     Violations of US Lanham Act, 15 U.S.C. §1125(a)(1)(B): Misrepresenting Nature of Goods and Services in Commercial Advertising By Using JJ Tech's Trademarks/Servicemarks to Cause Confusion in the Marketplace as to Designation of Origin**

101.    Plaintiff incorporates the preceding allegations as if fully set forth herein.

102.    On information and belief, Defendants have engaged in such wrongful conduct as the use of JJ Tech's trademarks/servicemarks on marketing materials and presentations.  Tech-Flo's marketing materials include JJ Tech's trademark/servicemark and identify Tech-Flo as a "licensed international and domestic distributor of JJ Tech Jet Pumps and Ultra-Flo Systems."  *See* Exhibit K, Tech-Flo Presentation.  The "JJ Tech jet pump" is referenced in the presentation as well.  *Id.*

103.    On information and belief, Defendants engaged in such wrongful conduct with the purpose of misleading or confusing customers and potential customers as to the origin, sponsorship, or approval of the goods and services advertised, marketed,

and offered in connection with JJ Tech's marks, name, and of trading upon JJ Tech's goodwill and business reputation.

104.   Defendants' use in commerce of JJ Tech's trademarks and servicemarks constitutes a false designation of origin and/or a false or misleading description or misrepresentation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of Defendants' goods/services with that of JJ Tech.

105.   Defendants' use in commerce of JJ Tech's trademarks and servicemarks with the knowledge that JJ Tech owns such constitutes intentional conduct by Defendants to misrepresent the nature, characteristics, qualities, or geographic origin of Defendants' goods/services with that of JJ Tech's in commercial advertising or promotion.

106.   JJ Tech is being irreparably harmed and damaged as result of Defendants' false designation of origin through commercial advertising or promotion.  Additionally, JJ Tech is entitled to damages to compensate for such acts.

107.   Defendants' acts have been willful.

108.   JJ Tech is entitled to immediate injunctive relief to restrain and enjoin Defendants' use of JJ Tech's tradename and trademarks/servicemarks.

**Count 7 –      Unfair Competition under US Lanham Act, 15 U.S.C. § 1125(c):
Dilution by Blurring**

109.    Plaintiff incorporates the preceding allegations as if fully set forth herein.

110.    JJ Tech's trademarks/servicemarks are famous and distinctive and recognized by JJ Tech's customers as the source or origin of superior and quality jet pumps.

111.    On information and belief, Defendants adopted and used JJ Tech's trademarks/servicemarks after they had become famous and distinctive.  For instance, on information and belief, Defendants have engaged in such wrongful conduct as the use of JJ Tech's trademarks/servicemarks on marketing materials and presentations.  Tech-Flo's marketing materials include JJ Tech's trademark/servicemark and identify Tech-Flo as a "licensed international and domestic distributor of JJ Tech Jet Pumps and Ultra-Flo Systems."  *See* Exhibit K, Tech-Flo Presentation.  The "JJ Tech jet pump" is referenced in the presentation as well.  *Id.*

112.    Through the use of JJ Tech's trademarks/servicemarks, the distinctive trademarks/servicemarks of JJ Tech are impaired.

113.    Defendants' use of JJ Tech's trademarks/servicemarks is likely to cause and have caused dilution by blurring.

114.    Defendants' use of JJ Tech's trademarks/servicemarks have caused irreparable harm to the value of JJ Tech's trademarks/servicemarks.  Additionally, JJ

Tech has suffered damages as result of Defendants' use of similar trademarks/servicemarks so as to cause dilution by blurring and is entitled to damages to compensate for such acts.

115.    JJ Tech is being irreparably harmed and damaged as result of Defendants' false designation of origin through commercial advertising or promotion and is entitled to damages to compensate for such acts.

116.    Defendants' acts have been willful.

117.    JJ Tech is entitled to immediate injunctive relief to restrain and enjoin Defendants' use of JJ Tech's tradename and trademarks/servicemarks.

**Count 8 –     Unfair Competition under US Lanham Act, 15 U.S.C. § 1125(c): Dilution by Tarnishment – Use of JJ Tech's Trademarks/Servicemarks on Tech-Flo's Customer PR**

118.    Plaintiff incorporates the preceding allegations as if fully set forth herein.

119.    JJ Tech's trademarks/servicemarks are famous and distinctive and recognized by JJ Tech's customers as the source or origin of superior and quality jet pumps.

120.    On information and belief, Defendants adopted and use JJ Tech's trademarks/servicemarks after they had become famous and distinctive.  For instance, on information and belief, Defendants have engaged in such wrongful conduct as the use of JJ Tech's trademarks/servicemarks on marketing materials and presentations.

Tech-Flo's marketing materials include JJ Tech's trademark/servicemark and identify Tech-Flo as a "licensed international and domestic distributor of JJ Tech Jet Pumps and Ultra-Flo Systems."   *See* Exhibit K, Tech-Flo Presentation.   The "JJ Tech jet pump" is referenced in the presentation as well.  *Id.*

121.    Through the use of JJ Tech's trademarks/servicemarks, the distinctive trademarks/servicemarks of JJ Tech are impaired.

122.    Defendants' secondary use of JJ Tech's trademarks/servicemarks caused dilution by tarnishment and harm to the value of JJ Tech's trademarks/servicemarks.

123.    Defendants' inferior products have further caused dilution by tarnishment and harm to the value of JJ Tech's trademarks/servicemarks.

124.    Through Defendants' use of JJ Tech's trademarks/servicemarks on inferior products that have resulted in customer complaints, the reputation of JJ Tech's trademarks/servicemarks have been harmed.  JJ Tech has suffered irreparable harm and damages as result of the injured reputation of its trademarks/servicemarks and products and is entitled to injunctive relief and damages to compensate for such acts.

125.    JJ Tech is being irreparably harmed and damaged as result of Defendants' false designation of origin through commercial advertising or promotion and is entitled to damages to compensate for such acts.

126.    Defendants' acts have been willful.

127.    JJ Tech is entitled to immediate injunctive relief to restrain and enjoin Tech-Flo's use of JJ Tech's tradename and trademarks/servicemarks.

**Count 9 –      Unfair Competition under Texas Common Law**

128.    Plaintiff incorporates the preceding allegations as if fully set forth herein.

129.    Defendants' acts and conduct as alleged above in this Complaint constitute unfair competition pursuant to the common law of the State of Texas.

130.    Defendants' acts and conduct as alleged above have damaged and will continue to damage JJ Tech and have resulted in an illicit gain of profit to Defendants in an amount that is unknown at the present time.

131.    JJ Tech is being irreparably harmed and damaged as result of Defendants' acts of unfair competition is entitled to damages to compensate for such acts.

132.    Defendants' acts have been willful.

133.    JJ Tech is entitled to injunctive relief to restrain and enjoin Tech-Flo's acts of unfair competition.

**Count 10 –     Breach of Manufacturing Agreement**

134.    Plaintiff incorporates the preceding allegations as if fully set forth herein.

135.    Based on information and belief, Defendants Roland Jackson and DPS breached the Manufacturing Agreement.  For instance, by continuing to manufacture jet pumps and components therefore beyond the scope of the Manufacturing Agreement. *See* Exhibit C.

136.    Defendant DPS' rights to manufacture JJ Tech's pumps, nozzles and mixing tubes has expired by the terms of the Manufacturing Agreement.

137.    On information and belief, DPS and its agents continue to manufacture nozzles and mixing tubes in violation of the terms of the Manufacturing Agreement.

138.    DPS and its agents continue to use JJ Tech's confidential and proprietary information in violation of the terms of the Manufacturing Agreement.

139.    Defendants' acts have been willful.

140.    JJ Tech has suffered damages as a result of Defendants' breaches of the Manufacturing Agreement and is entitled to damages to compensate JJ Tech for this breach.

**Count 11–    Breach of Distribution Agreement**

141.    Plaintiff incorporates the preceding allegations as if fully set forth herein.

142.    The Distribution Agreement was terminated by agreement of the parties after Tech-Flo informed JJ Tech that it would no longer carry JJ Tech's jet pumps exclusively.

143.    On information and belief, Defendants breached the Distribution Agreement.   For instance, by continuing to use JJ Tech's marks and copyrighted software beyond the terms of the contract.

144.    Defendants' acts have been willful.

145.    JJ Tech has suffered damages as a result of Defendants' breaches of the Distribution Agreement and is entitled to damages to compensate JJ Tech for this breach.

**Count 12 –    Breach of the P&S Agreement**

146.    Plaintiff incorporates the preceding allegations as if fully set forth herein.

147.    The P&S Agreement provided for the sale and transfer of by Roland Jackson of all of his "***trade secrets, know how, and confidential business*** or technical information for products or services relating to downhole jet pumps or diaphragm surface driving pump systems."  *See* Exhibit A, ¶ 5.

148.    As a consequence of the foregoing assignment, Roland Jackson had no base of knowledge or know how with which he could design or develop a competing downhole jet pump or diaphragm surface driving pump system or provide services related to either.

149.    On information and belief, notwithstanding Roland Jackson's assignment of know how, trade secrets and confidential information, Roland Jackson has aided Tech-Flo, his son Bill Jackson, and Erik Reissig to develop a competing jet pump design.

150.    On information and belief, the inferior jet pump design developed by Roland Jackson, Bill Jackson, and Erik Reissig for Tech-Flo uses the same nozzles and mixing tubes as the genuine JJ Tech jet pump design.

151.    On information and belief, the fact that Tech-Flo's jet pump was designed to use exact copies of JJ Tech's nozzles and mixing tubes was purposeful inasmuch as the parties were in possession of JJ Tech's Technical Drawings.

152.    On information and belief, the decision to design Tech-Flo's jet pump in a manner to use exact copies of JJ Tech's nozzles and mixing tubes was intentionally done so that Tech-Flo could improperly use JJ Tech's copyrighted Jet Pump Program for the critical task of optimizing the performance of Tech-Flo's jet pump and thereby effectively market Tech-Flo's jet pump systems against JJ Tech's Jet Pump systems.

153.    JJ Tech paid good and valuable consideration for the assignment by Roland Jackson of "***trade secrets, know how, and confidential business or technical information*** for products or services relating to downhole jet pumps or diaphragm surface driving pump systems."

154.    Roland Jackson's use of the same trade secrets, know how, confidential information, and technical information assigned to JJ Tech is a breach of the P&S Agreement.

155.    Roland Jackson acted in concert with Tech-Flo and his son Bill Jackson, and Erik Reissig to conceal the use by Defendants of the information previously assigned to JJ Tech by informing JJ Tech that it had "purchased a jet pump design and

license from a non Tech-Flo related group."[3]  Only recently, upon inspection of the Tech-Flo pump has JJ Tech learned that the Tech-Flo pump was designed expressly to use JJ Tech's nozzles and mixing tubes.   Defendants' misrepresentations and concealment were done with the express purpose of defrauding JJ Tech of the value of the property rights it purchased from the Jacksons pursuant to the P&S Agreement.

156.   Defendants Roland Jackson, DPS, Bill Jackson, Erik Reissig, and Tech-Flo's acts have been willful, wanton and callous breaches of the P&S Agreement.

157.   JJ Tech has suffered damages as a result of Defendants' breaches of the P&S Agreement and is entitled to damages to compensate JJ Tech for such breach, including a substantial disgorgement of the consideration paid by JJ Tech to Roland Jackson.

## VI.
## Application for TRO Against Defendants

158.   JJ Tech seeks a temporary restraining order and a preliminary and permanent injunction prohibiting and enjoining Defendants from the following acts:

a)   Continued use of JJ Tech's trademarks/servicemarks in any Tech-Flo and DPS marketing materials;

b)   Continuing to represent Tech-Flo and DPS as affiliated and/or associated with JJ Tech in any manner;

---

[3]   *See* Exhibit D, Tech-Flo letter of May 18, 2012 signed by Bill Jackson.

c)      Continuing to remove or alter the copyright management information on JJ Tech's copyrighted Technical Drawings and copyrighted Jet Pump Software;

d)      Continued use of JJ Tech's copyrighted Jet Pump Software to size and/or select mixing tubes and/or nozzles except for jet pumps manufactured by JJ Tech or under license from JJ Tech; and

e)      Continued use of JJ Tech's copyrighted Technical Drawings to manufacture jet pump components including nozzles and/or mixing tubes for jet pumps.

159.    Unless Defendants are immediately restrained, JJ Tech will continue to be irreparably harmed.  JJ Tech has and will continue to suffer immeasurable loss and damage as a result of Defendants' continued use of JJ Tech's trademarks/servicemarks and copyrighted works.

160.    Unless this Court issues a temporary restraining order against Defendants, JJ Tech's exclusive rights as the owner of trademarks/servicemarks and copyrighted works will continue to be infringed upon and used by Defendants for their financial benefit.

161.    JJ Tech has no adequate remedy at law for Defendants' wrongful conduct because, among other things, (a) JJ Tech's copyrights, trademarks, and servicemarks are

unique and valuable property which have no readily determinable market value; (b) Defendants' infringement constitutes harm to JJ Tech such that JJ Tech could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin, or authenticity of the infringing materials; and (d) Defendants' wrongful conduct and the resulting damage to JJ Tech, is continuing.

162.    The balance of equities between JJ Tech on the one hand and Defendants on the other hand favor the issuance of immediate injunctive relief.  Failure to grant injunctive relief would, in effect, sanction Defendants' wrongful conduct.  Injunctive relief is necessary to preserve the status quo between the parties pending a hearing on the preliminary injunction and a final trial on the merits of the issues.

163.    The issuance of injunctive relief will not adversely affect public policy.  In fact, it is the public policy of the United States to stop and prevent the unlawful infringement on the exclusive rights of copyright owners.

164.    For the reasons articulated herein, JJ Tech respectfully requests that a temporary restraining order pursuant to 17 U.S.C. §§ 502 and 1203, and 15 U.S.C. §§ 1116(a) and 1125(c) be issued against Defendants which provides that:

a) Defendants    are    prohibited    from    continued    use    of    JJ    Tech's trademarks/servicemarks on any Tech-Flo and DPS marketing materials;

b)  Defendants are further prohibited from continuing to represent Tech-Flo and DPS as affiliated and/or associated with JJ Tech in any manner;

c)  Defendants are further prohibited from continued use of JJ Tech's copyrighted Jet Pump Software to size and/or select mixing tubes and/or nozzles for jet pumps except for jet pumps manufactured by JJ Tech or under license from JJ Tech;

d)  Defendants are further prohibited from continued use of JJ Tech's copyrighted Technical Drawings to manufacture jet pump components including mixing tubes and/or nozzles for jet pumps;

e)  Defendants are further prohibited from removing any copyright management information from JJ Tech's copyrighted Jet Pump Software and copyrighted Technical Drawings;

f)  Defendants are prohibited from falsely designating the origin of or falsely misrepresenting their goods/services in commercial advertising as those of JJ Tech;

g)  Defendants are prohibited from destroying or altering any document, computer or tangible thing relating in any way to the information, documents and materials referenced in this Complaint; and

h) Roland Jackson is prohibited from continuing to use the know how, confidential information, and technical information sold by him under the P&S Agreement.

## VII.
## Preliminary Injunction

165.   JJ Tech further requests that the Defendants be cited to appear and show cause and that upon such hearing a preliminary injunction pursuant to 17 U.S.C. §§ 502 and 1203 and 15 U.S.C. § 1125 (c) be issued enjoining Defendants and all parties in privity with them, including officers, directors, and employees of DPS and Tech-Flo from directly or indirectly violating the terms of paragraph 164 above (to the extent that a preliminary injunction has not already been issued against them) and further enjoined in a manner that the Court deems appropriate and necessary to preserve the status quo.

## VIII.
## Permanent Injunction

166.   JJ Tech further requests that a permanent injunction be ordered on the final trial of this cause, enjoining Defendants and all parties in privity with them, including officers, directors, and employees of DPS and Tech-Flo from directly or indirectly violating the terms of paragraph 164 above (to the extent that a permanent injunction has not already been issued against them) and further enjoined in a manner that the Court deems appropriate and necessary to fully preserve the rights granted to

the copyright owner, trademark owner and owner of other intellectual property described above.

## IX.
## Verification

167.     Attached hereto in support of the forgoing application for injunctive relief is the Verification of John Tom James which is incorporated herein by reference.

## X.
## Conditions Precedent

168.     All conditions precedent to JJ Tech's right to recover as herein alleged, if any, have been performed, have occurred or have been waived.

## XI.
## Jury Demand

169.     JJ Tech demands a trial by jury.

## XII.
## Prayer

170.     For these reasons, JJ Tech asks for judgment against Defendants Tech-Flo, DPS,  Erik Reissig, Roland Jackson and Bill Jackson jointly and severally for the following:

A.  That the Court enter a judgment against Defendants as indicated below:

1.  That JJ Tech is the sole and rightful owner of the following federally registered copyrights:

a. Copyright Registration No. TXu 1-853-579 for JJ Tech's copyrighted Jet Pump Software, "New Coleman Pump Co."; and

b. Pending registrations for JJ Tech's copyrighted Technical Drawings:

    i. J & J Technical Services, L.L.C.'S 1.6 HSF Jet Pump Exploded View;

    ii. J & J Technical Services, L.L.C.'s 1.6 Mixing Tube;

    iii. J & J Technical Services, L.L.C.'s 1.6 Nozzle

    iv. J & J Technical Services, L.L.C.'s 2.8 Jet Pump Exploded View;

    v. J & J Technical Services, L.L.C.'s 2.8 Mixing Tubes; and

    vi. J & J Technical Services, L.L.C.'s 2.8 Nozzles;

2. That Defendants have infringed JJ Tech's rights in the following federally registered copyrights, in violation of 17 U.S.C. § 501:

a. Copyright Registration No. TXu 1-853-579 for JJ Tech's copyrighted Jet Pump Software, "New Coleman Pump Co."; and

b.  Pending registrations for JJ Tech's copyrighted Technical Drawings:

    i.  J & J Technical Services, L.L.C.'S 1.6 HSF Jet Pump Exploded View;

    ii.  J & J Technical Services, L.L.C.'s 1.6 Mixing Tube;

    iii.  J & J Technical Services, L.L.C.'s 1.6 Nozzle

    iv.  J & J Technical Services, L.L.C.'s 2.8 Jet Pump Exploded View;

    v.  J & J Technical Services, L.L.C.'s 2.8 Mixing Tubes; and

    vi.  J & J Technical Services, L.L.C.'s 2.8 Nozzles;

3.  That Defendants have intentionally removed or altered JJ Tech's copyright management information, in violation of 17 U.S.C. § 1202(b);

4.  Find that Defendants Erik Reissig, Roland Jackson and Bill Jackson are vicariously liable for the acts of copyright infringement of Tech-Flo and DPS;

5.  That Defendants have infringed JJ Tech's rights in the following trademarks and servicemarks, in violation of 15 U.S.C. 1125(c):

---

        a.  JJ Tech

        b.  New Coleman Pump Company

6.  That Defendants have committed and are committing acts of false designation of origin and false misrepresentation in commercial advertising, in violation of 15 U.S.C. § 1125(a);

7.  That Defendants have committed and are committing acts of unfair competition through dilution by blurring, unfair completion through dilution by tarnishment, in violation of 15 U.S.C. § 1125(c);

8.  That Defendants have engaged in unfair competition in violation of Texas common law;

9.  That Defendants have breached the terms of the P&S Agreement, Distribution Agreement and the Manufacturing Agreement in violation of Texas common law;

10. That the Defendants are jointly and severally liable;

11. Entering a permanent injunction consistent with the terms prayed for in the Temporary Restraining Order;

12. Enjoining Roland Jackson from continuing to use the know how, confidential information, and technical information sold by him under the P&S Agreement;

13. That the Defendants' acts have been willful; and

14. That Defendants have otherwise injured the business reputation and business of JJ Tech by the acts and conduct set forth in this Complaint.

B. That the Court issue injunctive relief pursuant to 17 U.S.C. §§ 502 and 1203 and 15 U.S.C. § 1125 against Defendants, and that Defendants, their directors, principals, officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, be enjoined and restrained from:

1. Infringing on JJ Tech's exclusive rights as the copyright owner of the Jet Pump Software;

2. Infringing on JJ Tech's exclusive rights as the copyright owner of the jet pump Technical Drawings;

3. Removing any copyright management information from JJ Tech's copyrighted Jet Pump Software and copyrighted Technical Drawings;

4. Using JJ Tech's trademarks/servicemarks, or any confusingly similar marks;

5. Using any false designation of origin or misleading description or false or misleading representation that can or is likely to lead the trade or public individuals erroneously to believe that such goods and/or services are manufactured, assembled, produced, distributed, offered for distribution, circulation, sold, offered for sale, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for JJ Tech, when such is not true in fact;

6. Engaging in any other activity constituting an infringement of any of JJ Tech's trademarks, servicemarks, and/or copyrights, or of JJ Tech's rights in, or right to use or to exploit these trademarks, servicemarks, and/or copyrights; and

7. Assisting, aiding, or abetting any person or business entity in engaging in or performing any of the activities referred to in subparagraphs (1) through (6) above.

C. That the Court order Defendants jointly and severally to pay JJ Tech's general, special, actual, and statutory damages as follows:

---

1.  JJ Tech's actual damages and the Defendants' profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), or alternatively, enhanced statutory damages pursuant to 17 U.S.C. § 504(c), and 17 U.S.C. § 504(c)(2);

2.  JJ Tech's actual damages and the Defendants' profits attributable to the violation pursuant to 17 U.S.C. § 1203(c)(2), or alternatively, statutory damages pursuant to 17 U.S.C. § 1203(c)(3);

3.  JJ Tech's actual damages and the Defendants' profits attributable to the violation pursuant to 15 U.S.C. § 1117(a);

4.  JJ Tech's damages and Defendants' profits pursuant to Texas common law;

5.  Disgorgement of a portion of the P&S Agreement consideration paid by JJ Tech to Roland Jackson;

6.  Exemplary damages for Defendants' breach of the various contractual agreements cited herein; and

7.  Such other general and special damages to which JJ Tech may show itself entitled at law and in equity.

D.  That the Court order Defendants to pay JJ Tech both the costs of this action and the reasonable attorneys' fees incurred by it in prosecuting this action, pursuant to 17 U.S.C. §§ 505 and 1203, and 15 U.S.C. § 1117(a);

E.  That the Court award JJ Tech exemplary damages for the Defendants' willful, wanton, malicious and fraudulent acts;

F.  That the Court order Defendants to pay pre-judgment and post-judgment interest;

G.  That the Court order equitable relief including damages attributable to Defendants' unjust enrichment and impose a constructive trust for the payment thereof, and disgorgement of profits; and

H.  That the Court order all other general and equitable relief the Court deems appropriate.

PREMISES CONSIDERED, JJ Tech prays that the Court immediately issue a Temporary Restraining Order against Defendants and, following notice and hearing, a Preliminary Injunction as requested above and that, upon final trial hereon, it have and recover judgment for the sought after relief, injunctive relief, damages, punitive damages, equitable relief, attorneys' fees, costs of court, prejudgment and post-judgment interest at the maximum lawful rates as requested above, together with such other and further relief to which it may be justly entitled.

---

Respectfully submitted,

/s/ J. David Cabello
J. David Cabello
Attorney-in-charge
Texas Bar No. 03574500
S.D. Texas I.D. No. 3514
Wong, Cabello, Lutsch, Rutherford &
 Brucculeri, LLP
20333 SH 249, Suite 600
Houston, Texas 77070
Tel.:  (832) 446-2400
Fax: (832) 446-2424
Email:  dcabello@counselip.com

*Attorneys for Plaintiff*
**J & J Technical Services, L.L.C.**

Of Counsel:
William A. Jones, Jr.
Law Office of William A. Jones, Jr.
P.O. Box 2644
210 West Florida Avenue
Ruston, Louisiana 71273-2644
Tel.: (318) 255-2944
Fax: (318) 254-8223
Email: billjones-coyle@suddenlinkmail.com